IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| TAJ MAURICE PITTMAN, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | 1:12CV1306 |
| v. | ) | 1:08CR489-1 |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

## ORDER AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Petitioner Taj Maurice Pittman, a federal prisoner, filed a Motion, an Amended Motion, and a Memorandum (Docket Entries 92-94),[1] all seeking to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255. Respondent (the "Government") has filed a Response. (Docket Entry 100.) Petitioner has filed a Reply (Docket Entry 108) and a Letter (Docket Entry 107), in which he seeks leave to exceed the page limit set by local rule regarding the length of a reply. This matter is now before the Court for a ruling. *See* Rule 8, Rules Governing Section 2255 Proceedings.

### Procedural Background

On December 15, 2008, Petitioner was the subject of a six-count indictment in case number 1:8CR489-1. (Docket Entry 3.) Count One charged him with bank robbery of the SunTrust Bank in Concord, North Carolina on June 17, 2008, in violation of 18 U.S.C. §

---

[1] Unless otherwise noted, all cites to the record are to criminal case 1:8CR489-1.

2113(a). (*Id.*, Count One.) Count Two charged him with armed bank robbery of the SunTrust Bank in Concord, North Carolina on June 17, 2008, in violation of 18 U.S.C. § 2113(a) and (d). (*Id.*, Count Two.) Count Three charged him with the carry and use, by brandishing, of a firearm during and in relation to a crime of violence, armed robbery of the SunTrust Bank in Concord, North Carolina on June 17, 2008, in violation of 18 U.S.C. § 924(c)(1)(A)(ii). (*Id.*, Count Three.) Count Four charged him with bank robbery of the Wachovia Bank in Kannapolis, North Carolina on November 7, 2008, in violation of 18 U.S.C. § 2113(a). (*Id.*, Count Four.) Count Five charged him with armed bank robbery of the Wachovia Bank in Kannapolis, North Carolina on November 7, 2008, in violation of 18 U.S.C. § 2113(a) and (d). (*Id.*, Count Five.) Count Six charged him with the carry and use, by brandishing, of a firearm during and in relation to a crime of violence, armed bank robbery of the Wachovia Bank in Kannapolis, North Carolina, in violation of 18 U.S.C. § 924(c)(1)(A)(ii) and (c)(1)(C)(i). (*Id.*, Count Six.)

On April 27, 2009, Petitioner was the subject of a three-count indictment in case 1:09CR159-1. (Case No. 1:09CR159-1, Docket Entry 1.) Count One charged him with interference with commerce by threats as to the General Nutrition Center ("GNC") in Concord, North Carolina, in violation of 18 U.S.C. § 1951(a). (*Id.*, Count One.) Count Two charged him with interference with commerce by threats as to the GNC in Salisbury, North Carolina, in violation of 18 U.S.C. § 1951(a). (*Id.*, Count Two.) Count Three charged him with interference with commerce by threats as to the GNC in Lexington, North Carolina, in violation of 18 U.S.C. § 1951(a). (*Id.*, Count Three.)

2

On January 7, 2010, Petitioner was found guilty by a jury as to Counts One through Six in case 1:08CR489-1. (Docket Entry 49.) Petitioner was also found guilty as to Counts One through Three in case 1:09CR159-1. (*Id.*) He was sentenced to imprisonment for 609 months. (Docket Entry 71.) After an unsuccessful appeal, *United States v. Pittman*, 450 Fed. App'x 249 (4th Cir. 2011), Petitioner filed the instant motions.

## Background

The follow testimony was given at trial.[1] On November 7, 2008, a black male wearing a light brown heavy coat, black ski mask, traffic vest and construction hat entered Wachovia Bank, located at 1501 S. Cannon Blvd., Kannapolis, North Carolina. (Docket Entry 77 at 60-71, 73-79.) The suspect brandished a firearm. (*Id.* at 62, 69, 74-75.) The suspect jumped over the teller counter and ordered the tellers to open their money drawers. (*Id.* at 64, 68-69, 73-74.) He then ordered everyone to lay on the floor. (*Id.* at 69, 73-74.) The suspect then went to separate cash drawers and retrieved the money. (*Id.* at 69-70, 75.) The suspect then left the Wachovia by the same door he had previously entered. (*Id.* at 65.)

The suspect fled in a Blue Ford Focus and turned into a nearby Bi-Lo parking lot. (*Id.* at 82.) Shortly thereafter, the suspect vehicle was observed to have red colored smoke coming from it. (*Id.* at 82-83.) The Ford Focus was found empty in the parking lot with its interior covered in red dye from exploded dye packs. (Docket Entry 75 at 25-27.) Among other items,

---

[1] As noted above, Petitioner was convicted for multiple robberies. Nevertheless, as explained, Petitioner's claims revolve around (1) whether the state had probable cause to secure an arrest warrant soon after the Wachovia robbery and (2) whether his Fourth Amendment rights were violated during the search of his former girlfriend's apartment. The Court has therefore limited its description of the relevant testimony accordingly.

3

the vehicle contained an application bearing the name "Jessica Malachi" ("Malachi"). (*Id.* at 35.) The vehicle was owned by Enterprise Rental located in Charlotte. (*Id.* at 27.) The investigation revealed that the vehicle was rented to Kamesha Johnson ("Johnson"). (*Id.* at 27.) When interviewed Johnson advised that she had rented the vehicle for Petitioner. (Docket Entry 77 at 98-100, 108-09.) At some point, Johnson also stated that Petitioner contacted her after the robbery, admitted to the robbery, and asked her to lie to the police about him. (*Id.* at 100-01.)

A state warrant was obtained for Petitioner's arrest. (Docket Entry 75 at 73.) On November 21, 2008, Petitioner was arrested by members of the Charlotte Police Department outside the apartment of Jessica Malachi. (*Id.* at 37-38, 129-130.) Dye stained money was located in the apartment. (*Id.* at 43-51, 49.) Firearms were also recovered and one was noted to have red dye stains. (*Id.* at 51-53.) Also, Petitioner was noted to have a large tattoo of a scorpion on the side of his neck. (Docket Entry 77 at 101-02.)

Petitioner subsequently bonded out of jail, however, a federal warrant was then issued for his arrest. (*Id.* at 81; PSR ¶ 12.) Petitioner was ultimately arrested on January 27, 2009 in Atlanta Georgia. (Docket Entry 77 at 103-105.) Petitioner was interviewed by the FBI and admitted his involvement in multiple bank robberies, including the robbery detailed above. (*Id.* at 132-143.)

## Petitioner's Claims

Petitioner raises four issues. First, he contends that trial counsel was constitutionally ineffective for "refusing to raise due process and fourth amendment violations arguments."

4

(Docket Entries 92-93, Ground One.) Second, he asserts that the Government failed to disclose *Brady* material. (*Id.*, Ground Two.) Third, Petitioner asserts ineffective assistance of appellate counsel based upon counsel's failure to raise "due process, *Brady* and Fourth Amendment violation arguments on direct appeal." (*Id.*, Ground Three.) Fourth, Petitioner contends that trial counsel was ineffective for failing to file a pre-trial motion to suppress. (*Id.*, Ground Four.) As explained below, none of these claims has merit.

## Discussion

### Claim One

Petitioner's first claim is that trial counsel was constitutionally ineffective for "refusing to raise due process and fourth amendment violation arguments." (Docket Entry 92, Ground One.) To prove ineffective assistance of counsel generally, a petitioner must establish: (1) that his attorney's performance fell below a reasonable standard for defense attorneys, and (2) that he was prejudiced by this performance. *See Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984). With respect to the first prong, the petitioner bears the burden of affirmatively showing that his counsel's performance was deficient, that is, that the performance fell below an objective standard of reasonableness under prevailing professional norms. *Id.* at 688-89; *Spencer v. Murray*, 18 F.3d 229, 233 (4th Cir. 1994). With respect to the second prong, the petitioner must show that prejudice resulted from the deficient performance, that is, that there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694. A reasonable probability

5

is one "sufficient to undermine confidence in the outcome." *Spencer*, 18 F.3d at 233 (citing *Strickland*, 466 U.S. at 694).

Here, Petitioner essentially contends that the Kannapolis police fabricated a statement attributed to Johnson that Petitioner robbed the Wachovia bank. (Docket Entry 92 at 5-6; Docket Entry 93 at 9-10; Docket Entry 94 at 2-10; Docket Entry 108 at 2-7.) Petitioner contends further that Kannapolis law enforcement intentionally used that false information to support a state arrest warrant. (*Id.*) According to Petitioner this, in turn, led to his arrest and the subsequent discovery of incriminating evidence. (*Id.*) Petitioner reaches these conclusions based on the following reasoning: even though Johnson did ultimately implicate Petitioner in the Wachovia bank robbery, she did not do so until *after* the arrest warrant was issued. (*Id.*) Consequently, Petitioner reasons, the Kannapolis police must have *necessarily* fabricated Johnson's statement to be used in support of an arrest warrant. (*Id.*) Petitioner's also argues that trial counsel was ineffective for failing to contest this issue at any point. (*Id.*)

Trial counsel, in turn, has filed an affidavit addressing Petitioner's claim. She states that "[b]efore, during, and after trial, I had no good faith basis to believe that the Kannapolis police fabricated evidence, and therefore did not raise that issue in Mr. Pittman's trial." (Docket Entry 100, Attach. 2.) As explain below, Petitioner's claim lacks merit.

To begin, this issue of ineffective assistance of counsel was raised and argued by Petitioner to the Court after trial but before sentencing. The Court rejected this issue in its entirety for lack of any evidence. Petitioner did not raise this issue on appeal. Consequently, had trial counsel raised this issue with the Court, it is clear that it would have been rejected for

6

the same reasons it was when Petitioner raised the issue *pro se*. Thus, there is no reason to believe that counsel acted in an objectively unreasonable manner in failing to raise it.

More specifically, after trial but prior to sentencing, in pertinent part, Petitioner filed three motions. The first was a pro se motion to "Dismiss Indictments with Prejudice Due to Outrageous Government Misconduct." (Docket Entry 52.) In it, Petitioner made the argument described above, regarding the allegedly fabricated evidence used to support a state arrest warrant. (*Id.*) The second two motions sought substitute counsel based on trial counsel's allegedly ineffective assistance. (Docket Entries 55 and 60.) In these motions, Petitioner asserts that trial counsel was ineffective for failing to challenge the allegedly fabricated evidence described above and for failing to move to suppress evidence recovered from a consensual search of Malachi's apartment. (*Id.*)

The Court held a hearing on Petitioner's motions requesting substitute counsel, at which time both Petitioner and trial counsel addressed the Court at length. (Docket Entry 78.) Although the Court ultimately permitted substitute counsel, it did so in order that Petitioner could "effectively communicate with his lawyer at this point going forward." (*Id.* at 29.) Nevertheless, the Court specifically found that at no point had counsel provided Petitioner ineffective assistance. In pertinent part, the Court stated:

> I find in this case that the defendant has alleged that a basis for his motion – and all allegations, by the way, are contained in his filings, but a basis for the motion is that Ms. Costner, although he admits she did an excellent job at trial, in his words, did not pursue an issue with respect to challenge the search warrant, I believe it was, for the search of his residence, which was, he says, based on the probable cause of Miss Johnson. I believe she was his girlfriend at the time, if I am not mistaken,

7

but Miss Johnson; and he says he has evidence that, in fact, probable cause could not have existed at the time the warrant was issued, and, therefore, that there must have been officer misconduct in this case; and his request of Ms. Costner to have failed to have pursued that line of inquiry constituted ineffective assistance of counsel.

He also points to a failure of Ms. Costner to object to a statement in the presentence report along the same lines, that is, a statement in the presentence report that probable cause for the search and ultimately arrest resulted from Miss Johnson's statement.

. . . .

I am going to find on the basis of this record that there is not sufficient evidence to indicate that Ms. Costner at any time performed below the level of competence expected by counsel with respect to the allegations that have been raised. In particular, the defendant does not have any indication that there was, in fact, a lack of probable cause that would have justified a challenge to the warrant in this case. The defendant has admitted that he doesn't, in fact, have the affidavit that supported the request for the warrant in this case; and so there's not been a showing that the only support, in fact, was the testimony of Miss Johnson, if that's relevant, according to the argument that he made.

So based on this record, I find that there is not lack of performance. So I don't get to the prejudice prong. So that motion for a new counsel, to the extent that it is grounded in the argument of ineffective assistance of counsel, is denied at this point.

(*Id.* at 27-28.)

Likewise, the Court later memorialized this finding in a written order in which it stated:

The court finds that counsel believed in good faith that she lacked adequate grounds to file the motion or motions requested and could not do so within the bounds of ethics and as an officer of this court. As relates to Defendant's claim of ineffective assistance, the court finds that Defendant has failed to

8

> make an adequate factual showing that Ms. Costner's conduct fell
> below the level of competency expected of counsel.

(Docket Entry 62 at 2.)

Next, at sentencing, the Court considered Petitioner's motion to dismiss the indictment based on the state's allegedly "outrageous conduct." (Docket Entry 52.) Although substitute counsel did not adopt Petitioner's motion, he did explain his understanding of it to the Court. (Docket Entry 79 at 13-20.) The Government also addressed the Court. (*Id.* at 20-23.) The Court then reached the following conclusions:

> Okay. Well, the motion is made pro se. This is Docket Entry 52, I believe, and it is made pro se. It has not been formally adopted by any of the counsel that have been of record, although Mr. Wilkinson has been kind enough to at least explain the nature of the argument as it's made in the papers.
>
> So I believe, first of all, that since defendant is presented by counsel, it is not a motion I am going to consider at this time. Even if I were to consider it, I would find that it's been waived at this point insofar as it's challenging any basis of any challenge to the -- or challenging the basis of any search or arrest in the case.
>
> To the extent it's alleging any outrageous conduct by the Government, at least during the trial, I deny the motion. I would deny the motion, if I were to consider it, not finding any on this record and not finding any proof of it by the defendant on this record based on his filing.

(Docket Entry 79 at 23.) The Court then denied the motion. (10/14/2010 Minute Entry.)

In his current pleadings, Petitioner again alleges that state law enforcement fabricated evidence then used to support a state arrest warrant. However, the critical flaw in Petitioner's claim is the same now as it was prior to sentencing. Simply put, there is no meaningful

9

evidence on the record suggesting that the Kannapolis police fabricated anything in support of an arrest warrant. Although Petitioner has filed a number of exhibits in support of his claim, none of them meaningfully suggest or demonstrate that law enforcement relied upon fabricated evidence to support a warrant. (Docket Entry 94 at 25-27; Docket Entry 108, Exs. 1-6.) Petitioner has done no more than make vague, conclusory, and unsupported allegations of misconduct by state law enforcement. *See Nickerson v. Lee*, 971 F.2d 1125, 1136 (4th Cir. 1992) (to obtain an evidentiary hearing or relief a habeas Petitioner must come forward with some evidence that the claim might have merit), *abrog'n on other grounds recog'd*, *Yeatts v. Angelone*, 166 F.3d 255 (4th Cir. 1999). Consequently, Petitioner has failed to demonstrate in any meaningful way that trial counsel's performance was constitutionally ineffective.[2]

Likewise, Petitioner has also failed to demonstrate prejudice. As noted earlier, on the day of the Wachovia robbery, November 7, 2008, Law enforcement found a blue Ford focus near the crime scene, which the suspect had abandoned in favor of a gold SUV. (Docket Entry 75 at 23, 25, 72; Docket Entry 77 at 82.) There was red dye in the Ford. (Docket Entry

---

[2] Petitioner insists that there is an affidavit in support of his state arrest warrant that indicates that probable cause was allegedly based upon Johnson's statement to law enforcement that he robbed the Wachovia. (*See, e.g.*, Docket Entry 93, Ground One; Docket Entry 94 at 2.) There is no such affidavit in the record and at sentencing his counsel and the Government indicated that they sought any such affidavit, but none apparently exists. (Docket Entry 79 at 15-16, 21-22.) Petitioner states that he knows this affidavit exists, however, because state law enforcement told the initial prosecutor in the case, who told his initial defense counsel in this case, who told Petitioner of this affidavit. (Docket Entry 93, Ground One.) However, in addition to being hearsay a number of times over, Petitioner never mentioned this alleged basis for personal knowledge when he originally pursued this claim prior to sentencing. (Docket Entries 52, 55, 60, 78 at 13-15.) In any event, this claim fails for all the reasons described herein.

10

75 at 26, 72.) An application was also found in the vehicle under the passenger's seat bearing the name "Jessica Malachi." (Docket Entry 75 at 35, 73.)

Law enforcement later determined where Malachi lived and visited her apartment on November 21, 2008. (*Id.* at 36, 38-40.) As explained in greater detail below in Ground Three, Malachi consented to the search of her apartment, whereupon both guns and money covered in red dye were discovered. (*Id.* at 43-56.) Meanwhile, during this same visit to Malachi's apartment, law enforcement encountered a gold Tahoe, which was significant as it was the vehicle that the suspect entered upon abandoning the Ford Focus. (*Id.* at 39-40.) Petitioner was arrested, pursuant to an arrest warrant, upon entering the Tahoe. (*Id.* at 73, 129-30.) Petitioner's wallet, money with a pink tint, and his cell phone were seized. (*Id.* at 56-57, 130.)

In light of the above, even if the state arrest warrant lacked probable cause (which the Court does not find for the reasons provided above), the only evidence seized without probable cause was Petitioner' wallet, dye stained money, and his cell phone. However, even without this evidence, the remaining evidence in the record overwhelmingly indicated Petitioner's guilt. This evidence includes (1) the firearm used in, and dye stained money taken during, the Wachovia robbery, (2) statements by Johnson that Petitioner confessed to robbing the Wachovia (described elsewhere herein), (3) Petitioner's own confession to a string of robberies (including the Wachovia robbery) to the FBI after he was later rearrested, consistent with federal authorization and in possession of a stolen vehicle; (4) Malachi's statement that Petitioner admitted committing the Wachovia robbery; and (5) ample testimony that Petitioner brandished a firearm during the bank robberies. (*Id.* at 81, 135-143; Docket Entry 77 at 45,

11

62, 69, 74-75; PSR ¶¶ 9, 18-20.) Consequently, this claim fails both prongs of *Strickland* and should therefore be denied.

### Claim Two

Petitioner's second claim is based on the Government's alleged "failure to disclose *Brady* material." (Docket Entry 92, Ground Two.) More specifically, Petitioner contends that the Government knew prior to trial that Johnson:

> never advised Kannapolis police that Pittman admitted to her of committing the Wachovia bank robbery as the Kannapolis police reported she did. Mr. Green had Ms. Johnson's written statement from her interview with the Kannapolis police to see that she never provide the Kannapolis police such information, and Mr. Green interviewed Ms. Johnson himself in August 2009 (which was five months prior to Pittman's trial) in which at that time he personally determined through her that she never provided the Kannapolis police such information.
>
> Immediately upon Mr. Green determining that the Kannapolis police had falsely reported obtaining the said information from Ms. Johnson inculpating Pittman in the robbery, he was obligated by the Constitution to inform the defense counsel of that. Mr. Green did not inform the defense of the false reporting, which was a *Brady* violation.

(*Id.*; *see also* Docket Entry 93 at 11.)

Under *Brady v. Maryland*, 373 U.S. 83, 87 (1963), and its progeny, the failure by the prosecution to disclose "evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Kyles v. Whitley*, 514 U.S. 419, 432 (1995) (citation omitted); *see also Giglio v. United States*, 405 U.S. 150, 154-55 (1972) (concluding that when the reliability of a witness may determine guilt or innocence, nondisclosure of evidence affecting credibility

12

denies the right to due process). Evidence is "favorable" both when it would tend to exculpate the accused and when it can be used to impeach government witnesses. *United States v. Bagley*, 473 U.S. 667, 676 (1985). However, where the prosecution fails to disclose evidence favorable to the accused, such evidence is material only where there exists a "reasonable probability" that "had the evidence been disclosed . . . the result of the proceeding would have been different." *Kyles*, 514 U.S. at 433-44 (citations omitted).

This claim—as do most of Petitioner's claims—also turns on his allegation that state law enforcement fabricated evidence in support of an arrest warrant. Petitioner essentially contends that the Government had an obligation to tell the defense that the arrest warrant was based upon fabricated evidence. However, as explained above, nothing supports this contention. Moreover, Petitioner does not claim he did not make statements to Ms. Johnson admitting his involvement in the robbery, nor does he contest the timing of when he made those statements to her. Instead, he contests only whether she relayed that information to the Kannapolis Police Department on or about November 10th or at some time prior to his arrest. Petitioner has therefore failed to demonstrate any meaningful likelihood of the existence of evidence favorable to him, that it was material, or that it was suppressed by the Government. This claim should be denied.

### Claim Three

Next, Petitioner contends that appellate counsel was ineffective for "failing to raise due process, *Brady* and fourth amendment violation arguments on direct appeal." (Docket Entry 92, Ground Three; Docket Entry 93, Ground Three.) Claims of ineffective assistance of

13

counsel on appeal are also judged using the *Strickland* test. *See Lawrence v. Branker*, 517 F.3d 700, 708-09 (4th Cir. 2008). Appellate counsel need not raise on appeal every non-frivolous issue requested by a defendant. *Jones v. Barnes*, 463 U.S. 745, 752-53 (1983); *see also Evans v. Thompson*, 881 F.2d 117, 124 (4th Cir. 1989) (declaring that counsel pursued sound strategy when he "determined what he believed to be petitioner's most viable arguments and raised them on appeal"). Ineffective assistance of appellate counsel can be shown by demonstrating that "counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker." *Bell v. Jarvis*, 236 F.3d 149, 180 (4th Cir. 2000) (citation omitted).

Here, appellate counsel has filed an affidavit explaining why he did not pursue Petitioner's claims related to the above-mentioned arrest warrant. Specifically, he states:

> Leading up to the date for filing the opening brief, Mr. Pittman advised me that one issue he wanted to raise on appeal was that the police did not have probable cause to arrest him. I spent considerable time reviewing and investigating the potential argument. I concluded that, based upon the issue the district court addressed (which was really an ineffective assistance claim), along with the evidence that existed in the record at the time of the appeal, the argument available was weaker than others and had very little chance of success.
>
> On the other hand, Mr. Pittman may have a viable claim that his arrest was not supported by probable cause. To make the showing, he would have to show (a) that a police report was wrong in claiming Ms. Kamesha Johnson admitted to police, in a second interview around November 10 or 11, 2008 that Mr. Pittman had been involved in bank robberies and that Mr. Pittman had asked her to lie to police for him, (b) that the truth was that Ms. Johnson's second interview was in December 2008, as her testimony on cross-examination suggested; (c) that the arrest warrant issued relied upon a claim that Ms. Johnson had admitted on November 10 or 11, 2008 that Mr. Pittman was involved with the robberies; and (d) that no alterative grounds

14

> existed for Mr. Pittman's arrest without relying upon Ms. Johnson's statements.
>
> The proof needed to support that claim was not in the record at the time of the appeal. This is why I did not raise it on appeal. But I believe that, if Mr. Pittman had the proof to support the claim now, such as the affidavit that was submitted in support to the arrest warrant, and if that proof is now added to the record, Mr. Pittman may be able to demonstrate that the police did not have probable cause for his arrest.

(Docket Entry 100, Attach. 3.)

Under these circumstances, appellate counsel's tactical decision in declining to pursue Petitioner's theory was reasonable. As explained by appellate counsel, and as explained elsewhere herein, at no point in these proceedings has the record supported Petitioner's allegation of fabricated evidence, nor has the record at any point supported the conclusion that the arrest warrant lacked probable cause. Additionally, as further explained above, Petitioner has failed to demonstrate that the facts underlying his claim, even if true, prejudiced him in any meaningful way. Therefore, appellate counsel's decision to raise other issues on appeal and not this one was reasonable. This claim should therefore be denied.

### Claim Four

Last, Petitioner asserts that trial counsel was ineffective "for failing to file [a] pre-trial motion to suppress." (Docket Entry 92, Ground Four; Docket Entry 93, Ground Four.) Petitioner specifically contends that the consent search of Malachi's apartment where several incriminating items (*i.e.*, firearms and money covered in dye) were recovered was unconstitutional. (*Id.*) However, he concedes that "[t]he apartment was in [his] girlfriend's name and she gave the police consent to search the apartment." (Docket Entry 108 at 9.)

Petitioner asserts further that "he resided at the apartment too . . . [and] the bag [containing the seized evidence] was found zipped closed, buried underneath nothing but men clothing in a storage bin that was in the closet of the bedroom that he shared with his girlfriend." (*Id.*) Petitioner thus essentially contends that the search of his bag was unconstitutional. (*Id.*)

Trial counsel, in turn, has filed an affidavit in response stating that "Mr. Pittman alleges that I did not file a motion to suppress the search of his briefcase bag. I did not file a motion to suppress the search based on my research of the facts and the law at the time I tried the case." (Docket Entry 100, Attach. 2.)

Petitioner's claim has no merit. Law enforcement may search an individual or his property without a warrant, so long as the individual voluntarily consents to the search. *Schneckloth v. Bustamonte*, 412 U.S. 218, 219-220 (1973). Where one resident consents to the search of a residence with multiple occupants, authority to consent stems from the mutual use of the property by those with joint access or control, and so any of the co-inhabitants may permit inspection and the others assume the risk that common areas may be searched.[3]

In this case, Petitioner fails to put forward any valid reason as to why his girlfriend's consent to search her apartment would not include the contents of her closet. Upon entering her apartment, law enforcement noticed in the living room a "gun box" and money sitting on the couch. (Docket Entry 75 at 44, Exs. 14-15; *see generally id.* Exs. 13-23.) Additionally, the

---

[3] *United States v. Matlock*, 415 U.S. 164, 171 n. 7 (1974) (allowing admission of evidence found in a diaper bag in a bedroom closet following a search conducted pursuant to the consent of one with common authority over the bedroom); *Frazier v. Cupp*, 394 U.S. 731, 740 (1969) (holding that joint use of a duffel bag gave a third party authority to consent to the search of the bag).

closet contained an open bin, apparently used as a clothes hamper, with a zipped duffel bag in it. That duffel bag contained guns and money stained by dye. (Docket Entry 75 at 43-51.) The fact that the duffel bag had a man's clothing on top of it does not make the officer's search unreasonable or beyond the scope of consent.[4] Counsel's decision not to move to suppress evidence seized at Malachi's apartment was reasonable. Nor has Petitioner demonstrated any prejudice, especially given the overwhelming evidence of his guilt (including his confession and the statements of his ex-girlfriends, Johnson and Malachi) independent of the evidence seized at Malachi's apartment.

## Conclusion

For the foregoing reasons, the instant action lacks merit and should therefore be dismissed. An evidentiary hearing is not warranted in this matter.

**IT IS THEREFORE ORDERED** that Petitioner's Motion (Docket Entry 107) for leave to exceed the page limit in his reply is granted.

---

[4] *See United States v. Hylton*, 349 F.3d 781, 785-86 (4th Cir. 2003) ("Hylton and Harper co-inhabited the apartment that Harper leased. When Hylton stayed in the apartment, he shared the bedroom and bed with Harper. Accordingly, there can be no doubt that Harper had authority to consent to a search of both the apartment and the bedroom in which she slept. This factual circumstance is to be distinguished from a situation where one co-habitant has an exclusive and private area within the jointly occupied premises justifying the exclusion of others, such as a locked foot locker.") (citing *United States v. Block*, 590 F.2d 535, 541 (4th Cir. 1978); *United States v. Castaneda-Abrego*, No. 3:06-CR-378-W, 2007 WL 87666, at *6 (W.D.N.C. Jan. 9, 2007) (finding third party consent to search valid where it was given by defendant's "live-in cohabitant [who had] a plenary right of access to the bedroom and had ready access (even if not theretofore exercised) to the contents of the suitcase; and [where] the Defendant took no special precautions to protect his expectation of privacy in the contents of the suitcase"); *United States*, No. 04-159, 2005 WL 2807123, at *6 (W.D.Pa. Oct. 27, 2005) (finding that wife had authority to consent to search of husband's duffel bag in closet).

**IT IS THEREFORE RECOMMENDED** that Petitioner's motion to vacate, set aside or correct sentence (Docket Entries 92-94) be denied and that this action be dismissed.

/s/ Joe L. Webster
Joe L. Webster
United States Magistrate Judge

Date: January 8, 2016