IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

TAJ MAURICE PITTMAN,           )
                               )
        Petitioner,            )
                               )       1:08CR489-1
                               )       1:09CR159-1
    v.                         )       1:12CV1306
                               )
UNITED STATES OF AMERICA,      )
                               )
        Respondent.            )

**MEMORANDUM ORDER**

THOMAS D. SCHROEDER, District Judge.

Petitioner Taj Maurice Pittman objects to part of the Order and Recommendation of the United States Magistrate Judge (Doc. 110),[1] which was filed with this court in accordance with 28 U.S.C. § 636(b) and served on the parties on January 8, 2016. The Magistrate Judge recommends denial of Pittman's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. Pittman objects only to the Magistrate Judge's recommendation to deny claim four alleging that trial counsel was ineffective for not moving to suppress certain evidence related to two bank robberies.[2] (Doc. 112 at 1.) Pittman now also moves to amend his motion. (Doc. 125.)

---

[1] All docket citations are to case number 1:08CR489-1 unless otherwise noted.

[2] Pittman's other ineffective-assistance claims relate to his allegation that he was arrested without probable cause. In particular, Pittman points to the testimony of a former girlfriend, Kamesha Johnson, who

This court reviews de novo those portions of the Magistrate Judge's Recommendation to which Pittman objects. After a careful review and for the reasons set forth below, the court now adopts the Recommendation, as modified herein, denies Pittman's § 2255 motion, and denies his motion to amend as futile.

I. BACKGROUND

On June 17, 2008, SunTrust Bank in Concord, North Carolina, was robbed. A SunTrust teller testified that the robber pointed a handgun at her and others and that she believed the gun was black but "might have been silver and black." (Doc. 77 at 53.) Bank surveillance footage depicts a silver, semiautomatic handgun in the robber's hands. (Gov't Ex. 74; Doc. 77 at 32–33.)

On November 7, 2008, a Wachovia Bank in Kannapolis, North Carolina, was robbed. A Federal Bureau of Investigation ("FBI") agent who investigated the robbery testified that the robber displayed a "silver/chrome" handgun during the robbery. (Doc. 75 at 75.)

On November 21, 2008, members of the Charlotte-Mecklenburg Police Department arrested Pittman for the SunTrust and Wachovia robberies. The arrest took place outside the apartment of

---

told police that he admitted committing the Wachovia Bank robbery, but he points to her trial testimony that she told police after his arrest. The record fails to demonstrate that trial counsel was ineffective for failing to litigate these claims. Johnson provided other testimony sufficiently incriminating to Pittman, and a wealth of other evidence provided probable cause to support Pittman's arrest.

2

Pittman's girlfriend, Jessica Malachi. (Id. at 38; Doc. 112 at 1.) After Pittman's arrest, Ms. Malachi gave the police oral and written consent to search the apartment. (Doc. 112 at 1.) In the course of their search, police observed a box for a Taurus handgun in plain view on a couch in the apartment. (Doc. 75 at 44; see also Gov't Ex. 14 (depicting the box).) During the same search, police entered the couple's shared bathroom closet, where they noticed an open plastic tub containing men's clothing. (Doc. 75 at 44–45; Doc. 112 at 1; see also Gov't Exs. 19, 20 (depicting the tub).) At the bottom of the tub, police found a zipped, black bag,[3] inside of which were two plastic grocery bags. One grocery bag contained cash stained with red dye, and the other contained unstained cash, two guns, two clips, and loose ammunition. The first gun was a Smith and Wesson .45-caliber pistol, stained with red dye. The second was a Taurus 9-millimeter pistol. (Doc. 75 at 46–55.)

The State of North Carolina held Pittman in the Cabarrus County, North Carolina, jail from his arrest until December 3, 2008, when he made bail. (Doc. 75 at 74.) The same day, an FBI agent went to Malachi's apartment to arrest Pittman pursuant to a federal warrant. (Id. at 81–85.) When the agent announced his

---

[3] In their respective briefs, Pittman refers to this bag as a briefcase (e.g., Doc. 94 at 15), and the Government refers to it as a duffel bag (e.g., Doc. 116 at 4). At trial, the officer who found the bag referred to it as a "black bag" and indicated that it had a zipper. (Doc. 75 at 47; see also Gov't Ex. 21 (depicting the bag).)

3

presence, Pittman removed something silver from his pocket. The agent believed it to be a firearm. Pittman evaded the agent and was at large for the next two months. (Id. at 84-87.)

On January 27, 2009, Pittman was arrested in Atlanta, Georgia, after robbing General Nutrition Center ("GNC") retail stores on three occasions. (Id. at 104-06.) After his arrest, he admitted his involvement in the SunTrust and Wachovia robberies to the Atlanta police. (Id. at 105.) The day Pittman was arrested, an FBI agent questioned him regarding the robberies. Pittman told the agent he had used handguns in both robberies.[4] (Id. at 140 (SunTrust); id. at 141-42 (Wachovia).) At one point in the questioning, Pittman said he carried unloaded handguns during the robberies, but he also described carrying a loaded .45-caliber pistol during the Wachovia robbery. (Id. at 141.)

After Pittman's arrest in Atlanta, the Atlanta police and the FBI searched the vehicle in which the police found him. (Id. at 143-44, 149.) In the car's center console, the Atlanta police found a 9-millimeter handgun, to which Pittman had directed them. This handgun was silver. (Gov't Ex. 46; Doc. 75 at 149.) In the vehicle's trunk, the FBI found an air pistol. (Doc. 75 at 146, 149-50; Doc. 77 at 9-10.) The air pistol was black. (Gov't Exs.

---

[4] Pittman also admitted having robbed a SunTrust bank in Monroe, North Carolina, with a handgun. (Doc. 75 at 138-39.)

4

47, 48; Doc. 77 at 8-9.)

Pittman was indicted on six counts related to the bank robberies.[5] (Doc. 3.) He was tried in this court, and the Government successfully admitted evidence from the bag found in Malachi's apartment, including the handguns. On January 7, 2010, a jury found Pittman guilty of all counts. The court sentenced Pittman to 609 months of imprisonment, restitution, special assessments, and a supervised-release term. The Fourth Circuit affirmed Pittman's convictions and sentence. United States v. Pittman, 450 F. App'x 249 (4th Cir. 2011).

Pittman then filed the instant § 2255 petition, which the Magistrate Judge recommended be denied. Pittman now objects to the Magistrate's Recommendation, but only as it relates to Pittman's fourth claim.

Claim four addresses Pittman's convictions as to Counts Three and Six of Pittman's first indictment. Counts Three and Six charged him with violating 18 U.S.C. §§ 924(c)(1)(A)(ii) and 924(c)(1)(C)(i) in connection with the bank robberies. Section 924(c)(1)(A)(ii) imposes a minimum seven-year consecutive term of imprisonment on any person who brandishes a firearm "during and in relation to any crime of violence . . . for which the person may be prosecuted in a court of the United States." Section

---

[5] Pittman was indicted separately on three counts related to the GNC robberies. See Case No. 1:09CR159-1, Doc. 1.

5

924(c)(1)(C)(i) provides a twenty-five-year consecutive minimum sentence for a second or subsequent conviction under subsection 924(c)(1).

In claim four, Pittman alleges that his trial counsel was constitutionally ineffective because she did not move to suppress the contents of the bag found in Pittman's and Malachi's shared bathroom closet. Pittman argues that Malachi had no authority to consent to law enforcement's search of the bag. Had the court agreed and suppressed the guns, Pittman argues, his counsel could have argued that Pittman used the air pistol police found in Atlanta (instead of a firearm) to rob the banks. According to Pittman, this would create reasonable doubt that he used a real firearm while robbing the banks and thus prevent the jury from concluding that he violated §§ 924(c)(1)(A)(ii) and 924(c)(1)(C)(i).

Because the Government's first response to claim four (Doc. 100) was conclusory, this court ordered the Government to provide additional briefing (Doc. 113.) The Government filed its additional briefing on May 23, 2016. (Doc. 116.) Pittman moved for an extension of time to file a supplemental reply, which the court allowed (Doc. 123), even though replies are not allowed as a matter of course. Pittman's supplemental reply, dated September 19, 2016, was filed on September 23, 2016, and is deemed timely. (Doc. 124.) However, along with his reply brief, Pittman filed a

6

motion for leave to amend his pending § 2255 motion to add a claim that he was denied an opportunity to raise a Fourth Amendment challenge to a January 27, 2009 arrest in Atlanta, Georgia. (Doc. 125.)

These matters are now ripe for decision.

**II. ANALYSIS**

    **A.   Objections to Recommendation**

To prevail on his claim for ineffective assistance of counsel, Pittman must show that his trial counsel's performance was deficient and that her deficiency prejudiced his case. To show prejudice, Petitioner "must demonstrate 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' A reasonable probability is one 'sufficient to undermine confidence in the outcome.'" Lee v. Clarke, 781 F.3d 114, 122 (4th Cir. 2015) (quoting Strickland v. Washington, 466 U.S. 668, 694 (1984)). When the conviction is the result of a trial, Petitioner must demonstrate that "but for counsel's errors, there is a reasonable probability that he would not have been convicted." Id. at 123 (quoting United States v. Luck, 611 F.3d 183, 186 (4th Cir. 2010)). Although Strickland presents a two-pronged inquiry, courts should dispose of ineffectiveness claims on the prejudice prong where it is easier to do so. Moore v. Hardee, 723 F.3d 488, 500 (4th Cir. 2013) (citing Strickland, 466 U.S. at 697).

7

This is such a case. To succeed on the prejudice prong, Pittman must demonstrate a reasonable probability that (a) the court would have suppressed the contested evidence and (b) without the evidence, the jury would not have concluded that he used a firearm to commit the two bank robberies.

Here, it is far from clear that Pittman can demonstrate a reasonable probability that the evidence would have been suppressed.[6] However, even if the court assumes (without deciding)

---

[6] It is well-established that a third party with actual or apparent authority over a space may consent to its search. See, e.g., Stoner v. California, 376 U.S. 483 (1964); United States v. Bullard, 645 F.3d 237 (4th Cir. 2011). A third party has actual authority to consent when she has "common authority over or other sufficient relationship to the . . . effects sought to be inspected." United States v. Buckner, 473 F.3d 551, 554 (4th Cir. 2007) (alteration in original) (quoting United States v. Matlock, 415 U.S. 164, 171 (1974)). An officer can act on a third party's apparent authority to consent when the officer reasonably believes that the third party has actual authority to consent. Illinois v. Rodriguez, 497 U.S. 177 (1990); United States v. Kinney, 953 F.2d 863 (4th Cir. 1992).

Pittman concedes that Ms. Malachi gave valid consent to search her apartment and that the duffel bag was found in the couple's "shared" bathroom closet, to which Ms. Malachi had joint access. (Doc. 112, at 1; Doc. 116, at 19.) The bag was found under a pile of men's clothing in an open tub that appears to have served as a type of laundry basket. The bag had no identification on it; thus the record leaves open the possibility that it belonged to Ms. Malachi or to Pittman and Ms. Malachi jointly. The most helpful fact for Pittman is that the bag was zipped closed, which is evidence of some intended privacy. See United States v. Block, 590 F.2d 535, 541 (4th Cir. 1978). The cases on which Pittman relies are distinguishable in important ways. The contested evidence in United States v. Waller, 426 F.3d 838, 847-49 (6th Cir. 2005), United States v. Salinas-Cano, 959 F.2d 861, 862 (10th Cir. 1992), and United States v. Wilson, 536 F.2d 883, 884 (9th Cir. 1976), comprised contents of closed suitcases the defendants left in third parties' homes. Suitcases "historically command a high degree of privacy," making it more difficult for the government to prove the third party had authority to consent to the container's search. Salinas-Cano, 959 F.2d at 864. Similarly, the evidence in Block, 590 F.2d at 537, was found in a bedroom inside a locked trunk, another historically protected container. Here,

that the bag's contents would have been suppressed, Pittman has failed to carry his burden of showing a reasonable probability that the jury would not have otherwise convicted him of the bank robberies.

Indeed, although Pittman has claimed that without the contested evidence (in particular, the two handguns), the jury would not have concluded that he used a firearm in the bank

---

Pittman's bag was neither a suitcase nor locked.

United States v. Gardner, No. 5:11-CR-228-FL, 2013 WL 361063 (E.D.N.C. Jan. 30, 2013), is Pittman's most helpful case. In Gardner, the third party gave police consent to search a storage room to which she had joint access with the defendant. Inside the room were a locked gun case and a zipped duffel bag. There was evidence that the third party did not know of either container's existence or contents and did not have joint access to either. Citing Waller and Block, the district court held that the third party lacked authority to consent to a search of the gun case or duffel bag. Gardner, 2013 WL 361063, at *5–6. Pittman's case is similar to Gardner in that his bag was zipped closed and found in a space he occupied jointly with Ms. Malachi. But in Gardner, there was direct evidence that the third party did not have joint access to the gun case and duffel bag. Id. at *6. Moreover, the fact that Gardner locked his gun case was further evidence that he also meant to secure the contents of the accompanying, zipped duffel bag. Here, there is no such evidence. To be sure, Ms. Malachi never identified the bag to police as belonging to Pittman, or as not being hers. It appears that the police never asked who owned the bag. Indeed, the duffel bag may have even belonged to Malachi or to Pittman and Malachi jointly.

In contrast, the Government cites five cases in which courts admitted evidence obtained through consent searches of jointly controlled spaces. (See Doc. 116, at 17–18 (citing United States v. Matlock, 415 U.S. 164 (1974) (admitting evidence retrieved from a diaper bag in a jointly occupied bedroom closet); Frazier v. Cupp, 394 U.S. 731 (1969) (jointly used duffel bag); United States v. Hylton, 349 F.3d 781 (4th Cir. 2003) (space between box spring and mattress in a jointly occupied bedroom); United States v. Castaneda-Abrego, No. 3:06-CR-378-W, 2007 WL 87666 (W.D.N.C. Jan. 9, 2007) (live-in cohabitant's suitcase); United States v. Long, No. CRIM. 04-159, 2005 WL 2807123 (W.D. Pa. Oct. 27, 2005) (defendant's duffel bag in jointly occupied closet)).)

9

robberies, he now concedes as much in his recent supplemental reply. (Doc. 124 at 1-2 (conceding that "it is true that Pittman's trial counsel[']s failure to pursue the motion to suppress did not prejudice Pittman with respect to his 924(c) charges, because there was other evidence presented at the trial that, independantly [sic], would have influenced the jury to find Pittman guilty of the 924(c) charges").) There is in fact substantial, overwhelming evidence apart from the contents of the duffel bag that indicates that Pittman used a firearm in both robberies.

First, Kamesha Johnson, a girlfriend of Pittman, testified that Pittman owned a handgun. (Doc. 77 at 99, 105.) Second, after his arrest in Atlanta, Pittman admitted to an FBI agent that he had used handguns in both robberies. (Doc. 75 at 140 (SunTrust); id. at 141 (Wachovia).) Pittman told the agent he did not load the weapons before the robberies, but he also said that during the Wachovia robbery, he "produced" a handgun. (Id. at 141.) Third, an FBI agent testified that when he attempted to arrest Pittman on December 3, 2008, Pittman removed from his pocket a "silver-ish" item the agent believed to be a handgun. (Id. at 85-86.) Fourth, the Atlanta police found a 9-millimeter handgun in the center console of Pittman's car after his arrest on January 27, 2009. (Id. at 105; see also Gov't Ex. 46 (depicting the handgun).)

Pittman contends that his trial counsel could have argued that instead of using a firearm, Pittman robbed the banks using

10

the air pistol police found in Atlanta. But there is myriad record evidence against that claim. First, Pittman confessed to using a handgun in both robberies. There is not a reasonable probability a juror could have concluded that by "handgun," Pittman meant "air" or "bb" gun. Second, the air pistol retrieved from Pittman's car in Atlanta is different in color from the gun or guns used in the two robberies. The air pistol is entirely black. (Gov't Exs. 47, 48; Doc. 77 at 8-9.) Eyewitnesses from both robberies recounted the robber wielding a silver handgun (Doc. 77, at 53 (SunTrust); Doc. 75, at 75 (Wachovia)), and SunTrust's surveillance footage depicts a silver handgun in the robber's hands (Gov't Ex. 74; Doc. 77 at 32–33). Furthermore, the handgun police recovered from Pittman's car in Atlanta is silver. (Gov't Ex. 46; Doc. 75 at 149.) Finally, the box police found in plain view on the couch in Ms. Malachi's apartment is for a Taurus handgun. (Gov't Ex. 14; Doc. 75 at 44.)

When the remaining evidence is viewed in total, there is no reasonable probability that without the contested evidence the jury would have concluded that Pittman did not use a firearm in the robberies. Pittman's objection to claim four will therefore be overruled.

### B. Motion to Amend

Pittman moves to amend his § 2255 motion to assert a claim that he "was not given a full and fair oppertunity [sic] to timely

11

litigate" a Fourth Amendment claim.  (Doc. 125 at 1.)  Pittman claims that through trial the Government had led him to believe that his January 27, 2009, arrest in Atlanta, Georgia, was based on his driving a stolen car (which he concedes he never challenged because he had obtained the car from someone else and "there was a possibility that it could have been stolen").  (Id. at 1.)  Pittman now points to the Government's statement in its supplemental brief that he was arrested instead pursuant to a "BOLO [be on the lookout] for having committed a carjacking."  (Id.)  As a result, Pittman argues that the police misled him about the reason for his arrest, preventing him from timely challenging it, and therefore asks the court to suppress the evidence seized as a result of the arrest.  (Id. at 2.)  Specifically, Pittman seeks to suppress the personal property of the victims of the GNC robberies found in the car he was driving, all of Pittman's personal belongings from the car, the firearm and BB gun found in the car, and the statements he gave to law enforcement afterwards, and further to dismiss the charges in case number 1:09cr159-1.  (Id.)

Amendments to habeas petitions are governed by Federal Rule of Civil Procedure 15(a), which provides that leave should be given "when justice so requires."  However, leave should be denied when amendment would be futile.  United States v. Pittman, 209 F.3d 314, 317 (4th Cir. 2000) ("Under Rule 15(a) leave to amend shall be given freely, absent bad faith, undue prejudice to the opposing

12

party, or futility of amendment."); United States v. Hodge, No. 01-7216, 2002 WL 170733, at *1 n.* (4th Cir. Feb. 4, 2002) ("We note that the district court did not abuse its discretion by denying Hodge's motions to amend his § 2255 motion as such amendments would have been futile.")[7]  For several reasons, this is the case here.

First, Pittman's proposed new ground for relief is time-barred.  This is because the proposed ground for relief is subject to the one-year limitation period imposed by the Antiterrorism and Effective Death Penalty Act of 1996, P.L. 104-132 ("AEDPA") under subsection (f)(1);[8] (2) subsections 28 U.S.C. §§ 2255(f)(2)-(4) are inapplicable; and (3) Pittman's new ground for relief was filed after the one-year deadline and does not relate back to the grounds set forth in his original § 2255 motion.[9]  28 U.S.C. §§ 2255(f)(1)-(4); United States v. Pittman, 209 F.3d 314, 317 (4th Cir. 2000).

---

[7] Unpublished opinions of the Fourth Circuit are not precedential. See Collins v. Pond Creek Mining Co., 468 F.3d 213, 219 (4th Cir. 2006) (recognizing that "we ordinarily do not accord precedential value to our unpublished decisions" and that such decisions "are entitled only to the weight they generate by the persuasiveness of their reasoning" (citation omitted)).

[8] In this case, Pittman's direct appeal was final in mid-January 2012 when the time for filing a petition for writ of certiorari expired, ninety days after the Fourth Circuit Court of Appeals affirmed his convictions on October 17, 2011. United States v. Pittman, 450 F. App'x 249 (4th Cir. 2011).  Pittman's convictions thus became final one year later in January 2013 under 28 U.S.C. § 2255(f)(1).  The motion to amend was not filed until 2016 and is more than three years late.

[9] The Fourth Amendment grounds for relief raised in Pittman's pending § 2255 motion attack a search and seizure of evidence by Kannapolis, North Carolina law enforcement involving his girlfriend's apartment as

13

Second, despite his assertions to the contrary, Pittman had a fair and full opportunity to litigate his Fourth Amendment search and seizure claims. The trial record is clear that Pittman was aware of the facts which he complains are new to him: the allegation that he was stopped on a BOLO in Atlanta for driving a stolen car suspected of being involved in a carjacking. For example, during trial, there were multiple references to this fact. (Doc. 75 at 86 (Special Agent McCranie testifying it was a suspected "stolen vehicle"); id. at 104 (Officer Dimauro testifying that he stopped Pittman's vehicle because the vehicle "was flagged on the system as being a stolen vehicle used in a carjacking – or taken in a carjacking"); id. at 107 ("It [the BOLO displayed on his in-car computer] notified us that it was a stolen vehicle taken in a carjacking").) The court further engaged in extensive argument out of the presence of the jury, but with Pittman present, about whether reference to an uncharged "carjacking" was prejudicial, and the court agreed to, and did, give a limiting instruction to the jury to disregard any references to a carjacking. (Id. at 110-19.) At no time did Pittman claim surprise, and while aware of his claim, he failed to raise it. See Stone v. Powell, 428 U.S. 465, 494 (1976) ("[W]here the State

---

well as his arrest after the Wachovia robbery. The search and seizure Pittman seeks to attack in his proposed amendment challenges a subsequent search and seizure of a vehicle he was found driving in Atlanta, Georgia. (Compare Doc. 110 at 15-17 with Doc. 125.)

has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." (footnote omitted)); see also United States v. Johnson, 457 U.S. 537, 562 n.20 (1982) (recognizing Stone's applicability to § 2255 cases). Consequently, Pittman's challenge to his encounter with law enforcement mentioned in his motion to amend is not cognizable on collateral review.[10]

Last, even if the proposed ground for relief were both timely and cognizable on collateral review (neither of which is the case), it would fail on the merits. Petitioner's Fourth Amendment challenge is vague, conclusory, and unsupported and fails in its entirety for these reasons alone. Even assuming that the BOLO the Atlanta police acted on was incorrect to the extent it rested on a suspicion of carjacking, as Pittman now contends, Pittman does not (and did not) challenge the truth of the BOLO's other basis

---

[10] For similar reasons, the claims would be procedurally barred. See United States v. Pettiford, 612 F.3d 270, 280 (4th Cir. 2010). The Supreme Court has recognized exceptions to the procedural bar when a petitioner can demonstrate either cause and prejudice or actual innocence. Daniels v. United States, 532 U.S. 374, 382–83 (2001). However, a petitioner cannot establish "cause" when the underlying claims were in existence and were available at the time, even if the claims were then arguably futile. Pettiford, 612 F.3d at 281–82. Moreover, actual innocence means factual — not legal — innocence. Id. at 283–84. Pittman does not dispute that the car he was driving during his Atlanta arrest may have been stolen – another ground for the BOLO stop – and further has not demonstrated that he is factually innocent of the robberies. Indeed, the evidence of guilt was substantial.

that the vehicle may have been stolen.  Thus, Pittman fails to indicate how his claim, even if correct, would provide him any basis for relief under the Fourth Amendment.  Nickerson v. Lee, 971 F.2d 1125, 1136 (4th Cir. 1992), abrog'n on other grounds recog'd, Yeatts v. Angelone, 166 F.3d 255 (4th Cir. 1999).

For all these reasons, Pittman's motion to amend (Doc. 125) will be denied as futile.

### III. CONCLUSION

Because, as Pittman now concedes, there is not a reasonable probability that the jury would not have convicted him of the charged armed bank robberies had the court suppressed the contested evidence, he fails to establish that his counsel was constitutionally deficient.  Consequently, the court adopts the Magistrate Judge's Recommendation (Doc. 110) as to all claims, as modified herein, and denies Pittman's § 2255 motion.  Further, because the requested amendment to the § 2255 motion would be futile, Pittman's motion to amend will be denied.

IT IS THEREFORE ORDERED that Pittman's motion to vacate, set aside or correct sentence, as amended (Docs. 92-94) be DENIED, that his most recent motion to amend (Doc. 125) be DENIED, and that this action be DISMISSED WITH PREJUDICE.  Finding neither a substantial issue for appeal concerning the denial of a constitutional right affecting the conviction nor a debatable procedural ruling, a certificate of appealability is not issued.

16

A judgment in accordance with this Memorandum Order will be entered contemporaneously.

>                                    /s/   Thomas D. Schroeder
>                                   United States District Judge

September 27, 2016